We have two cases to be submitted today on oral argument, beginning with United States v. Trotter. Mr. Hester. Good morning, Your Honors. May it please the Court. In this case, the government plainly breached its promise to Mr. Trotter to recommend a guideline sentence. Plain error review applies, and this error was clear and obvious because there are a number of very clear, obvious, really aggressive attacks on the guideline range that the government agreed to in this case. But the sentence was within the guideline, at the top. It was, Your Honor, and Kirkland is an example of a case where the court didn't follow the government's recommendation after it breached the agreement, the plea agreement, yet this court still reversed on plain error review. In Kirkland, the court sentenced in the middle of the guidelines, even though the government was breaching the plea agreement and asking for top of the guidelines. So even though the court didn't do what the government was asking in Kirkland, it was still plain error reversal. So I think that is a case we're relying on heavily today. Is it your view that if we agree with you on that issue, that this must be assigned to a different district judge? Your Honor, as in Williams, which we cite in the conclusion section of our brief, we're requesting that this court vacate the judgment, remand to the district court, and then Mr. Trotter will make a counsel decision with his trial counsel on whether he gets specific performance of the plea agreement in front of a new judge or elects to just withdraw from the plea agreement altogether. That's exactly what the court did. When you say specific performance, that says between the defendant and the government. You can't bind the court. Right. So what he bargained for here and what we're saying the government obviously breached was for a guideline recommendation from the government. And you can't make a guideline recommendation and then call the guidelines a myopic bubble that's tunnel vision, that is out of step with the public's view on these cases, and then say that they significantly underrepresent the severity of the conduct, which the government said on page 418 of the record. So those are clear, obvious breaches of the government's promise to Mr. Trotter that Mr. Trotter bargained for and gave up all of his important trial rights. And a reading of Kirkland and Malmquist, you'll find a lot of poignant commentary on the value of that promise. Those cases talk about how important the government's recommendation is to courts at sentencing. And when the government makes these promises, how fundamental it is to the system, and this is really getting into prong four and prong three of plain error review, but how fundamental these agreements are to the system where 98% of defendants plead guilty. This really is the criminal justice system. So when a defendant gives up his or her trial rights in exchange for a promise, we are bargaining for what Mr. Trotter bargained for was this guideline recommendation from the government. The government breached that multiple times. And we cite cases where even one comment would be enough to breach a plea agreement. Someone can break a promise with just one statement, whether that's in law or in life, right? Just one statement can break a promise. Here we have multiple statements. The guidelines are a bubble that underrepresent the severity of the conduct. I would like to discuss a little bit prong three, Your Honors, because I think Kirkland and Malmaquist give us kind of a unique take on prong three. It's not just a reasonable probability that the sentence was impacted. All we need to show with these sorts of aggressive breaches is that the sentence may have been impacted. And again, as I was discussing with Judge Smith, in Kirkland, even though the court didn't follow the government's recommendation, it still met prong three review and impacted the sentence because nothing in the record showed that the court would impose the same sentence without the breach. So that is our case here. The court did talk about a lot of the reasons it was relying on for the sentence, but none of those reasons show that it wasn't influenced by the government's really aggressive breach in this case. One thing your brief seems to say influenced the judge was the testimony of a victim, essentially. His son had died from fentanyl. Are you asking us to do something about that? What would be appropriate for district court to do? Your Honor, I think it would be appropriate that the government not use that testimony to then kind of springboard its argument into an attack on the guidelines, which it did here. So you're not suggesting the district court ought to suppress or not hear that kind of victim testimony, are you? I think the court can hear that if it would like to. What I have objected, perhaps, if I were trial counsel, because the facts show this. The father really was – or the gentleman who overdosed and died was, I think, two transactions removed from Mr. Trotter, and he actually sadly passed away, I believe, four months after Mr. Trotter was already arrested and in pretrial detention. And everyone agreed that Mr. Trotter wasn't legally responsible for that death. I hope I'm answering your question. I guess my question is victims seem to have almost a right to testify or say something in sentencing within bounds. I'm just asking, are you asking for specific relief or not? That was my main question. I do think on remand it would be inappropriate for the government to use the testimony in the same manner to kind of springboard this gentleman asked for a life sentence. That shows how that is a helpful wake-up call for the court, which is what the government did here. Your Honors, I think if there are no further questions, I will yield the remainder of my time back to the court. But in conclusion, as in Williams, we're asking that the court vacate this judgment, remand to the trial court where Mr. Trotter can elect to either withdraw this plea altogether or seek specific performance in front of a new district judge. Thank you. Thank you, Mr. Hester. You saved time for rebuttal. Mr. Locker? Good morning, Your Honors. May it please the court, counsel. It's an uncomfortable and difficult position to be here this morning to defend my sentencing argument. There are certainly parts of it that I regret the way that I phrased it. I regret its lack of clarity as to what I meant. That's also why I'm here and not one of my colleagues, not some other counsel on behalf of the government. Because context matters. Context certainly matters in this case. Well, you know, your brief, it seems like you're of two minds. One page it sounds like the plea agreement is still in place. And the next page, well, we can ignore the plea agreement. Your Honor, I'd be happy to explain what I meant. I regret that I was not more clear in what I meant in my sentencing argument, that I do not need my sentencing argument to breach the plea agreement. I had no intention of casting it aside the plea agreement. Well, what does, you know, you're not bound by the guidelines mean? You don't have to be bound? That doesn't sound like you're supporting an in-guideline sentence. I'd like to turn directly to that phrasing then, Your Honor. The language in question specifically, that's in question, appears as follows. And for that reason, in the larger perspective, I see a mandatory minimum of ten years, statutory maximum of one. And although the guidelines, as calculated, are now 135 to 168, the court has full discretion. I believe those words are the ones that are most problematic in my argument. But those words are also 100 percent legally and factually true. And in fact, those words in context were an argument for an in-guideline sentence that I'd like to explain. From the beginning of that hearing and throughout the progression of that hearing, the trial court made it clear that it intended to sentence Mr. Trotter within the guidelines. The court announced at the beginning of the hearing that it accepted the plea agreement and that the sentence would be consistent with its terms. The court specifically said the court now informs the defendant that the plea agreement is finally accepted and the judgment and sentence will be consistent with it. The court then announced that it intended to sentence the defendant within the guideline range and wanted to hear from the government where within the guidelines it believed the sentence should lie. The court said, Mr. Locker, I need to hear from you where you think the appropriate sentence lies, having had the guideline range resolved to 135 to 168 months. I interpreted that to mean, and I think everyone in the courtroom would have interpreted that to mean, that he is announcing that he wants to hear where within those guidelines the appropriate sentence lies. And then the court asked both parties whether we were seeking an upper departure variance, and we announced explicitly that we were not. So I believe everyone in the courtroom believed that the parameters were set. You know the range of possible sentences, and this will be a guideline sentence. And so any argument thereafter has to be placed within that context. So what does my argument mean when I say the guidelines are too low? That is an argument for a high end of guideline sentence. I have a fundamental disagreement with Mr. Hester about his argument that arguing with the guidelines underrepresent conduct is a call for a sentence outside the guidelines. I believe that's a fundamental fallacy that's baked into his argument at every stage. If the guidelines are too low, that's not necessarily an argument for a sentence outside the guidelines. It's an argument that if we believe, if the government believes that the guidelines are too low, it's essentially saying that the guidelines have already created, had already lessened the sentencing exposure of the defendants. And therefore, the court should not consider the bottom end of the guideline range because we don't want the court to compound the error with the guidelines by considering a sentence at the bottom of the range. And that's what I meant. Because when I asked the court to consider the larger context, immediately before the statements, I asked the court to consider the 35 to 33 statements. It seems to me your argument is very close to compounding your error. I'm sorry, Your Honor? Your argument today is close to compounding your error in this case. Your Honor, I understand why the court may see that. If I may continue to explain, I genuinely believe that asking the court to consider the fact that the guidelines may be too low and under-represent conduct is in no way an argument for an above-guideline sentence. And specifically, I'd like to point to my sentencing memorandum because in my sentencing memorandum that I filed before the sentencing hearing, I asked for an in-guideline sentence, and I made the exact same arguments. The exact same arguments in the sentencing memorandum, and they were as follows. First, that the guidelines are too low to reflect the seriousness of the conduct. Second, that the guidelines are too restrictive regarding death causation. And third, that the guidelines inadequately accounted for drugs known to be sold by Mr. Trotter but not seized during the investigation. And all three of those arguments were made in support of a clear and explicit request for an in-guideline sentence. Do you have it before you? Can you read us where you specifically asked for it? Yeah, that's okay. You can get your papers. I'm not questioning the validity of what you just said, but it would be helpful if you could just read that to us. I'd be happy to. This is your sentencing memorandum. This is my sentencing memorandum, Your Honor. The court should sentence Mr. Trotter to somewhere in the upper half of the recommended guideline range. The government's recommendation differs from probation's recommendation for a bottom-of-the-range sentence because the government's position of the PSR gives too little weight to the deadly consequences of Trotter's actions. The PSR finds that there is no victim impact, despite acknowledging that Trotter was the supplier of deadly fentanyl pills to Lewis, whose pills likely killed D.S. Although the government agrees that the clarity of the causal chain is insufficient to have held Trotter directly responsible for D.S.'s death, indeed, the government did not insist that Trotter or Lewis plead to an offense acknowledging the causation of death. However, this is not a victimless crime. Trotter was a high-volume dealer of deadly pills, and victims, in fact, die. Trotter should not be absolved of the tragedy of D.S.'s death simply because he was two steps above the person who sold D.S. the lethal pills in the supply chain. To do so turns on its head our general paradigm for determining relative culpability in drug supply chains. Distributors higher in the supply chain are more responsible, not less. And I go on to make the same arguments that I made at the sentencing hearing and explicitly stated again at the end, accordingly, this court should sentence Trotter to 151 to 168 months incarceration. That was at the hearing? What you just read? What I just read was my sentencing memorandum, which I previously filed. Okay, all right. That was before the oral part where you said the guidelines aren't binding on the court. Your Honor, I beg to differ. I made a nuanced argument that, ideally, guidelines do under-represent the conduct. No, I think, Judge Richman, the question, as I understand it, was that the last sentence that you read to us was from the sentencing memorandum, not from what was said in open court. That's correct, Your Honor. That's correct, Your Honor. I think the sentencing memorandum is important for two reasons. First, it demonstrates that there is nothing inconsistent, incongruent, or hypocritical about stating that the guidelines under-represent conduct in support of the recommendation for an in-guideline sentence. And second of all, the second point is that if these arguments are so offensive and so egregious and so such obvious breaches of the plea agreement, why has the appellate not complained about the sentencing memorandum? Because I made the same arguments in the sentencing memorandum. Did your sentencing memorandum say the guidelines are not binding on the court? No, Your Honor. Your brief was puzzling to me also because you talked about the defendant materially breaching and you say that that removed restraints on you and you bring in all the conduct that the government explicitly agreed would not be charged. And I had a hard time understanding what you're saying. Is there a plea agreement or is there not? And does his breach give you more leeway in your arguments in front of the court or not? Your Honor, if I may, if I may point to a portion of the transcript during the sentencing hearing where when the trial court asked me whether or not we would object, whether the government would object to his withdrawal of his objections, I indicated to the court, no, Your Honor, parties should agree to pivot and reconsider their position strategically with the court. However, the fact that those objections were made should be taken into account by the court in considering what kind of defendant it is dealing with under the 3553 factors, not in terms of whether or not the defendant... I'm talking about your brief to us. I'm sorry, Your Honor? I'm talking about your brief to us in this court. You cite cases that say if a defendant materially breaches his commitments under the plea agreement, the government is released from its obligations under that compact. Now, do you think there was still an agreement or not? I believe, Your Honor, that the government could have withdrawn from the plea agreement at that time. Why are you talking... Was there an agreement or not? Yes, Your Honor. Then why are you talking to us about his material breach? Because... And that releases you somehow. I don't... We chose to remain from the plea agreement. And because of that, he should receive the benefit of that plea agreement. So I don't believe that we are released from any obligations under it. But I do think it's a relevant factor when the court was considering under the 3553 factors what kind of defendant they were dealing with. I'd like to address Mr. Hester's complaint about my comment about guideline myopia because I think this goes to the core of his argument. That somehow arguing that the guidelines under requisite conduct... You're saying you're almost ending sentence to us at the end of your brief. The court may compare, this is to us, the government's ambiguous breach of the plea agreement with Trotter's blatant, unpunished breaches. Now, are you saying the agreement is over and we should just compare what happened and what the sentence was chosen or not? I don't understand what your position was. I think that's an equitable consideration. I don't think that... I believe we're still bound by the plea agreement, and I do believe we honored it. I'd like to turn to the third and fourth problems, Your Honors. Should the court find that there was a breach, I don't believe that it was clear and obvious. I think that this discussion about the contextual nuance demonstrates that there's at least a reasonable disagreement, but should the court find that there was a breach, I don't believe it affected the outcome. The appellant cites Kirkland, but Kirkland is a case where the government conceded error and the government argued explicitly outside the plea agreement. This is a situation where under the third and fourth problems here, there were significant and obvious reasons for the court to sentence Mr. Trotter at the high end of the guideline range if even the government had made no argument at all at sentencing. And in fact, I would point to factors that Judge Schrader at the sentencing hearing pointed out himself. On the record, he made no reference to the government's sentencing argument. It did make reference to the government's sentencing memorandum. First, Mr. Trotter avoided culpability for thousands of fentanyl pills that were not reflected in the guideline calculation. Judge Schrader mentioned multiple times that this was a long conspiracy, it involved lots of drugs, and it affected many lives. Judge Schrader mentioned that Mr. Trotter was the sole source of supply for a major fentanyl distributor. Judge Schrader also mentioned that firearms involved, and he mentioned this multiple times that it affected his view of sentencing. Mr. Trotter was already convicted felon and that he should not have guns, and this was also mentioned by the trial judge. There was also a child present in the home when the 4,900 fentanyl pills were seized at the time of the search warrant execution. Mr. Trotter had already received a considerable benefit from the government because the government had dropped a count of 18 U.S.C. 924C, which would have increased his sentence by 60 months as part of the plea bargaining process. And then also there's Mr. Sewell's testimony, which I believe is genuinely moving. The government did not call Mr. Sewell as a witness. I acknowledged him as a victim, and he had told me before the hearing that he wished to address the court, and so I simply referred the court to him. The court asked me if there were any victims present. I said yes, and he does wish to address the court, which was the context of Mr. Sewell's presentation to court. Let me interrupt you just to focus on what you just said about the additional 60 months, so that was part of the plea agreement? Yes, Your Honor. So if we were to remand and give the option to withdraw the agreement, then that 60 months would be back on the table? Is that right? That's correct, Your Honor. We would re-expose Mr. Trotter to an additional consecutive sentence of 60 months on top of the sentence for which he would receive on the underlying count. And so for all of those reasons stated, the sentencing court had significant reasons to sentence Mr. Trotter to the height of the guideline range, independent of any argument from either party. Kirkland says this, unless the record indicates that the district court would have imposed the same sentence regardless of the government's breach, the breach affects an appellate's substantial rights. Now, if we're in the record, can you point to that say, the record shows that the district court would have imposed the same sentence regardless of a breach? Your Honor, I would point to the record in pages 426 and 427, where the court cites numerous factors. Quote, I reviewed the sentencing memorandum that the government has filed, and I appreciate what you had to say. He has a prior conviction. This offense involves selling counterfeit oxycodone pills which were laced with fentanyl. He walked through each of the factors that I just cited as the reason for the sentence. Particularly on page 427 of the appellate record. So at the end of the day, I think based upon all these factors, the fact that the defendant was and would be responsible for such a large amount of drugs for such a long period of time involving, you know, a fairly sophisticated conspiracy, I do think a sentence on the high end of the range is what is appropriate here, and that's where I intend to sentence him. So I think the court indicated that its reasons were based on the facts that were presented to it. Well, doesn't every district court do that in every sentencing case on the record? How does that tell us that the particular sentence he chose was unaffected by your argument that the guidelines aren't binding and they're too low in the first place? Well, Your Honor, Judge Schrader did not have a statement phrase in there. He did not make an announcement that this is the same sentence I would impose apart from the guidelines or apart from argument. He did not make such a statement. But he did have multiple pages of the record where he discussed the exact reason as to why he sentenced Mr. Trotter to where he did, and none of them make reference to the government's sentencing argument. I thought he said your arguments were helpful. Well, he said, I appreciate the government's remarks, but he said that on the heels of his discussion of my sentencing memorandum. So I took that to mean he referred to the sentencing memorandum. Well, he quoted, he said he was referring to the sentencing memorandum. Did he not? It's in the same sentence. It's the second part of that sentence. I've reviewed the government's sentencing memorandum. I appreciate what you had to say. And I took that statement, I appreciate what you had to say in reference to the written memorandum, not the argument present in the court room that day. Regarding the fourth crime, Your Honors, I believe there's nothing in this case that seriously affects the fairness and integrity of public reputation of these judicial proceedings. Mr. Trotter bargained for and received an in-guideline sentence. On its face, there's nothing in this scenario that besmirches the reputation, the public reputation of these proceedings. And I'd also point the court to United States v. Hebron, which is cited by the appellant, and that holds up the standard that the defendant has, the appellant has an obligation to show that there's a reasonable probability that but for the error, he would have received a lesser sentence. I don't believe he can demonstrate that. He also, appellant can cite no cases where the government's breach has to be inferred or implied based on a cold reading of the record. In every single case that's cited by the appellant, the government's breach was explicit. Particularly in Kirkland, the government conceded that it breached. It had agreed to recommend a bottom-of-the-guideline sentence and it argued explicitly for 347 months, which was the top of the range. The appellant can cite no cases, no cases where it has to be inferred from context. And I believe the context, what I was trying to tell the court is that if the guidelines are the down-markers on a larger playing field, and the guidelines are already overlaid in the wrong part of the playing field, I don't want the court to consider the furthest part of those down-markers away from what I believe is the right position. That's not the same thing as asking for an outside-the-guidelines sentence. And so that's where I regret my lack of clarity. I do recognize... We appreciate your candor on that. If we should decide that the agreement was breached, I'm not suggesting whether we will or won't, but if we decide that the agreement is breached, is it mandatory under the Williams case or any other authority that this be assigned to a different district judge? Do we have any latitude on that? Or does Williams' Fifth Circuit public precedent require that? I don't think it requires it. I think it can go back... I mean, I went back and read Williams and it just seems to be an unequivocal statement, but that's why I'm asking what the government's position is on that. I don't believe it's required. I think that is the result we see, but I don't think it's one that's required by its holdings. Okay. But I... If I may take a moment to further explain my argument regarding the comments regarding guideline myopia. Guideline myopia is the fallacy of treating the guidelines once set as being both the high and low watermarks for a particular set of conduct. And if that's the case, once you start to see it that way, you now have to see Mr. Trotter as being the most egregious form of a Category 1 criminal history in order to receive a 168-month sentence. And I was asking the court specifically to expand its consideration, including the 3553 factors, in determining the appropriate sentence, but it was not an argument outside the guidelines. Thank you, Mr. Lockery. Thank you. Mr. Hester for rebuttal. So if we should agree with you and vacate the sentence and remand, you heard the discussion about what I call the additional 60-month provision. If you should decide not to go along with the plea agreement, do you agree that that 60 months is back on the table? That coincides where one gets wrong.  Of course, he could elect for specific performance of this plea agreement to a new judge, then it would still be dismissed. Your Honors, I heard, and I appreciate Mr. Locker being here, and we're not saying anything he did was malicious or bad intent, and I heard him trying to explain his comments at sentencing in context and what he meant and what he genuinely believed by those comments. With all due respect, that is irrelevant. What he said in front of the district court is what matters, and what he said in the sentencing memo was all before he made these aggressive attacks on the guidelines at the sentencing hearing. But then the district judge referred specifically to the government's sentencing memorandum. Yes, Your Honor. So the court considered the sentencing memorandum, the court considered a lot of different things, and what Kirkland says is simply because the court exercises its discretion, which it must do in every case, that doesn't mean it wasn't influenced by the breach. And this was an explicit breach. I think no matter how Mr. Locker wants to phrase it, he agreed to a guideline-range recommendation. You can't then come in and say the guidelines are a bubble and myopic and underrepresent the severity of the offense and still be asking for a guideline sentence. Did he say, remind the court that the sentence is life and that the court has full discretion? Did he say that or not? He did right at the very end, and he also used the phrase at least twice step back from the guideline range. We're asking that the court step back from the strictures of the guideline range. Look at all the 35.3a factors, and you have full discretion. By the way, the statutory maximum is life. Back to Prompt 3, substantial rights. I think it's really important I didn't say this. I did say it in my brief, but didn't say it in my opening argument. The neutral party's recommendation in this case was bottom-up the guidelines. Probation recommended to the court a bottom-up the guidelines sentence. Mr. Trotter was the lowest criminal history category available under the guidelines, criminal history category one. He also presented character rights and some character rights that the court considered. So he had a lot of mitigating factors. He had the neutral party asking for bottom-up the guidelines. He, of course, kept his agreement and asked for bottom-up the guidelines. So if you should achieve what you've referred to as specific performance, that would, of course, be to enforce the agreement. In your view, the agreement would be a sentence within the guidelines. Is that right? Well, it's not that the sentence is within the guidelines. It's that the government requests that sentence. And what he bargained for was that the government would come in and say the guidelines are an appropriate sentence here. And consistent with that agreement, a new district judge, if that's what we decide, could still impose it at the top of the range. And in your view, that would not be a reversible error. I think that's right, Your Honor. Yes, yes. I mean, we would have a new sentencing hearing where the government doesn't make these same attacks on the guideline range and actually ask for a guideline sentence, which it didn't do in the actual sentencing hearing. I know it did in the sentencing memorandum, but when we got to the sentencing hearing, complete different two, right? So we're saying give Mr. Trotter what he bargained for. That is a guideline recommendation from the government. So again, and we keep assuming if we were to agree with you on the underlying issue, so if this went back on remand, is it only the defendant that has the right to withdraw from the agreement, or does the government also have that option? It's only the defendant, Your Honor. Okay. Thank you for your time. I see my time has expired. Again, we're asking that the court vacate the judgment and remand to the district court. Thank you very much. Thank you, Mr. Hester. Your case is under submission, and we noticed that your court appointed, and the court wishes to thank you for your willingness to take the appointment, and we appreciate your good work on behalf of your client. Thank you, Your Honor. Remaining case for today, Camposano v. Bondi.